IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID JAYRET SURIEL,<br><br>Defendant. | Criminal No. 1:18-CR-468<br><br>The Hon. T.S. Ellis, III<br><br>Sentencing: September 27, 2019 |

## UNITED STATES' POSITION ON SENTENCING

The United States of America, through undersigned counsel and in accordance with 18 U.S.C. § 3553(a) and the U.S. Sentencing Commission Guidelines Manual (the "Guidelines" or "U.S.S.G."), hereby provides its position with respect to sentencing for the Defendant, David Jayret Suriel (the "Defendant"). The government has reviewed the Presentence Investigation Report (the "PSR") and agrees with the U.S. Probation Office that the Defendant's total offense level is 25 with a Criminal History Category of I. For the reasons set forth below, and given that the Defendant is safety valve eligible (along with the fact that co-defendants Jose Juan Jimenez and Melvin Acosta were recently sentenced by the Court to 366 days' imprisonment), the government recommends that the Court similarly sentence the Defendant to 12 months' and one day of imprisonment.

**I.    BACKGROUND**

The Court is well aware of the facts in this case, having previously accepted guilty pleas for all five defendants indicted in this case. The PSR also contains a fulsome accounting of the offense conduct. *See* ¶¶ 15-26. The government therefore offers the following abbreviated factual summary.

During the course of and in furtherance of the conspiracy, co-defendant Erwin Roa-Mustafa, along with co-defendant Jose Juan Jimenez, met a confidential source ("CS") and an undercover DEA agent on or about September 24, 2018, in Fairfax, Virginia to discuss the purchase of multi-kilogram quantities of cocaine to transport from Northern Virginia to Pennsylvania for distribution purposes. During the meeting, the CS negotiated the sale of 25 to 27 kilograms of cocaine for $27,000 per kilogram with the Roa-Mustafa and Jimenez. During the course of this discussion, the Roa-Mustafa said that he would "cut" the cocaine for resale.

On December 6, 2018, the five indicted defendants traveled from Pennsylvania (three defendants) and New York City (two defendants) to Northern Virginia expecting to purchase multi-kilograms of cocaine (up to 22 kilograms in total) from the CS and a DEA undercover agent. Upon arrival at a hotel in Chantilly, Virginia, the defendants discussed the deal with the CS and an undercover agent, which was recorded, and all five defendants were subsequently arrested. Jimenez brought $21,091 to the December 6 meeting. Co-defendants Raul and David Suriel brought $280,100 to the meeting (all of which belonged to Raul Suriel). Co-defendant Melvin Acosta brought $12,000 to the meeting. The total amount of cash that was seized by law enforcement on the day of the arrests is $313,191.

On April 18, 2019, the Defendant pleaded guilty to both drug trafficking counts of the Indictment. The Defendant's convictions would ordinarily carry a mandatory minimum sentence of 120 months' imprisonment and maximum sentence of life imprisonment, but the government notes that the Defendant is safety valve eligible. PSR ¶ 72.

II.   **APPLICATION OF THE SENTENCING GUIDELINES**

The government agrees with the U.S. Probation Office that the following provisions of the Guidelines apply:

2

- Pursuant to Section 2D1.1(c), the parties agree that the base offense level is 32 (at least 15 kilograms but less than 50 kilograms of cocaine).

- Pursuant to Sections 3E1.1(a) and 3E1.1(b), the offense level should be decreased by three levels total because the Defendant has accepted responsibility for the offense.

- Pursuant to Section 5C1.2 (the "safety valve" provision), the offense level should be decreased by an additional two levels total because the Defendant meets the criteria set forth in Section 5C1.2(a).

- Pursuant to Section 3B1.2(b), the offense level should be decreased by an additional two levels total because the Defendant was a minor participant in the criminal activity.

Factoring in the above, the government agrees with the U.S. Probation Office that the Guidelines are properly calculated at level 25 and Criminal History Category I, resulting in an advisory sentencing range of 57-71 months' imprisonment. PSR ¶¶ 71-72.

### III. SECTION 3553(a) FACTORS

After calculating the appropriate advisory Guidelines range, the court must "determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006). Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D). Based on a careful consideration of those factors, a sentence of 366 days' imprisonment is reasonable in this case.

The nature and seriousness of the Defendant's offense counsel in favor of imposing a 366

day sentence. Similar to his four co-defendants, the fact that the Defendant was willing to drive across state lines for hours to meet individuals who were strangers to him at a hotel in order to obtain multi-kilogram quantities of dangerous and highly potent drugs for distribution purposes in the community is a serious crime. As this Court is well aware, drug trafficking is an extremely violent business that has led to the deaths of at least hundreds of thousands of individuals over the last several decades. Coupled with this violence is the highly addictive nature of cocaine that has ruined countless lives.

Moreover, expert trial testimony in this Court previously established that the street value of cocaine in this area is about $100,000 per kilogram. *See United States v. Roger H. Meraz-Fugon*, Case No. 1:16-CR-18, ECF No. 65 at 15 (E.D. Va.) (O'Grady, J.). Accordingly, the street value of the 22 kilograms of cocaine that the Defendant, along with his co-conspirators, were involved in procuring for distribution purposes, but for law enforcement's successful interdiction, is approximately $2.2 million.

Regarding the Defendant's history and characteristics, the Defendant is a 26-year-old United States citizen with a limited college education. PSR ¶¶ 55, 63-64. The Defendant has no prior convictions or arrests. *Id.* ¶ 48. The Defendant reported that he is in good health and is not taking any prescribed medications. *Id.* ¶ 60. However, given the information set forth in paragraphs 61 and 62 of the PSR, and the Defendant's own reported interest in attending a treatment program, the government believes that he may benefit from mental health and substance abuse treatment.

The government notes that there are at least some mitigating factors present. To avoid any undue embarrassment to the Defendant given that this memorandum will be publicly filed, the government points the Court to paragraphs 55-56 of the PSR, rather than describing those

unfortunate circumstances here. The Defendant has certainly endured periods of hardship and heartbreak in his life. The government acknowledges these mitigating circumstances, but believes that even the Defendant would agree that it does not excuse or justify his decision to transport $280,100 in cash on behalf of his brother, Raul Suriel, to obtain multi-kilograms of exceedingly addictive and potentially lethal drugs. That the Defendant's girlfriend was pregnant with his son at the time he decided to commit this offense, *see id.* ¶ 57, only underscores how puzzling and counterproductive his actions have been. The Defendant certainly should have put the interests and care of his family above his desire to profit from the illegal drug trade.

Notwithstanding the above, the government notes that the Defendant's role in the offense conduct, although serious, was that of a minor participant. He is arguably the least culpable member of this five-defendant drug trafficking conspiracy for the following primary reasons: the Defendant did not contribute his own money toward the purchase of the cocaine; the Defendant did not plan or negotiate the drug transaction with anyone; and the Defendant was brought into the drug transaction by his brother, Raul Suriel, the day before the December 6, 2018 meeting. The choices that the Defendant voluntarily made that have led him before this Court resulted in very unfortunate consequences: he missed the birth of his son, whom he has not yet even had the pleasure of meeting in-person.

The government recognizes that co-defendants Jose Juan Jimenez and Melvin Acosta were each previously sentenced by the Court to 366 days' imprisonment. The government's sentencing recommendation for this Defendant certainly takes into account that sentence, and notes that there are at least three primary reasons why his sentence should not be any less, including:

- The Defendant's willingness to drive a "trap vehicle" (a vehicle with hidden compartments to evade law enforcement detection) from New York to Northern Virginia that contained the $280,100, while co-defendant Raul Suriel drove a separate vehicle to the December 6, 2018 meeting, emboldened Raul to go forward with this

large drug transaction. Raul was apparently concerned about being robbed during the meeting. The Defendant's decision to transport this exceedingly large sum of cash in a separate vehicle provided the necessary comfort and logistical assistance that Raul required to proceed with the multi-kilogram narcotics deal.

- The Defendant, similar to all of the co-conspirators, stood to gain financially from his voluntary participation in this drug trafficking conspiracy. Money motivated him. He admitted that Raul Suriel stated that he would "take care of him" (without specifying the amount of money he would receive) following the drug transaction.

- Without confirming or denying which defendant(s) in this case may have signed cooperation agreements with the government, it is clear that this Defendant affirmatively did not.

Accordingly, a 12 month (and one day) term of imprisonment is necessary to promote respect for the law, provide just punishment for the offenses of conviction, and afford adequate deterrence. Given the facts and circumstances in this case, the government believes that its sentencing recommendation achieves those ends.

## CONCLUSION

For the foregoing reasons, the government believes that a sentence of 12 months' (and one day) imprisonment and five years of supervised release would be sufficient, and not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

        Respectfully Submitted,

        G. Zachary Terwilliger
        United States Attorney

By:   /s/ Raj Parekh
        Raj Parekh
        Assistant United States Attorney
        United States Attorney's Office
        Eastern District of Virginia
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Phone: (703) 299-3700
        Email: raj.parekh@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2019, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record in this matter.  I further certify that I will provide a copy of the foregoing to the United States Probation Officer assigned to this matter.

    /s/  Raj Parekh
Raj Parekh
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700 (telephone)
(703) 299-3982 (fax)
raj.parekh@usdoj.gov